**IN THE UNITED STATES DISTRICT COURT FOR THE**

**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| AMY KLINE-BYINGTON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-23-491-AMG** |
| | ) | |
| MARTIN O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Amy Kline-Byington ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for supplemental security income ("SSI"). (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 7), and the parties have fully briefed the issues (Docs. 8, 14).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 10, 11). Based on the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

## I.    Procedural History

Plaintiff filed an application for SSI on July 13, 2021, and alleged an amended disability onset date of that same date.  (AR, at 81-82, 110).  The SSA denied the application initially and on reconsideration.  (*Id*. at 119, 131).  Then an administrative hearing was held on October 13, 2022. (*Id*. at 71-109).  Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  (*Id*. at 14-35).  The Appeals Council subsequently denied Plaintiff's request for review.  (*Id*. at 1-6).  Thus, the ALJ's decision became the final decision of the Commissioner.  *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

## II.    Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 13, 2021, the application date and amended alleged onset date.  (AR, at 19).  At Step Two, the ALJ found that Plaintiff had the severe impairments of "systemic lupus erythematosus (lupus); obesity; hypertension; fibromyalgia; migraines; bipolar disorder; major depressive disorder; generalized anxiety disorder; panic disorder; and posttraumatic stress disorder[.]" (*Id*.)  At Step Three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 20).  The ALJ then determined that Plaintiff had the RFC

> to perform less than the full range of light work as defined in 20 CFR
> 416.967(b) except that [Plaintiff] can occasionally climb, balance, stoop,
> kneel, crouch, and crawl.  [Plaintiff] can understand, remember, and carry
> out simple, routine, and repetitive tasks.  [Plaintiff] can relate to supervisors

2

and co-workers on a superficial work basis. [Plaintiff] can have occasional contact with the general public. [Plaintiff] can adapt to a work situation.

(*Id*. at 23-24). The ALJ then found at Step Four that Plaintiff had no past relevant work. (*Id.* at 29). Relying on the testimony of a vocational expert ("VE"), at Step Five the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as maid/housekeeping cleaner, hand packer, or mailroom clerk. (*Id.* at 29-30). Therefore, the ALJ concluded that Plaintiff was not disabled for purposes of the Social Security Act. (*Id.* at 30).

## III.    Claims Presented for Judicial Review

On appeal, Plaintiff asserts that the RFC is not supported by substantial evidence because "[t]he ALJ erred in failing to discuss [Plaintiff's] prescription for a cane." (Doc. 8, at 6). In response, the Commissioner argues that the ALJ's decision should be affirmed because it "is supported by substantial evidence and free from harmful legal error." (Doc. 14, at 1).

## IV.    The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically

determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment.  20 C.F.R. § 416.921; *see id.* §§ 416.902(a), 416.913(a).  A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim.  20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process).   To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[2]  whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy.  20 C.F.R. § 416.920(a)(4)(i)-(v).  Plaintiff

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a)(1).

bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir.

2015) (internal quotation marks omitted).  Even if a court might have reached a different

conclusion, the Commissioner's decision stands if it is supported by substantial evidence.

*See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that

either applies an incorrect legal standard or is unsupported by substantial evidence is

subject to reversal." *Staheli*, 84 F.4th at 905.

**V.      The ALJ Failed to Adequately Consider Plaintiff's Prescription for a Cane in Formulating the RFC.**

The ALJ discussed various pieces of evidence in support of his RFC determination

that Plaintiff could perform a reduced range of light work.  (AR, at 23-29).  First, the ALJ

considered a function report wherein Plaintiff indicated "difficulty lifting, squatting,

bending, standing, . . . walking, kneeling, . . . [and] climbing stairs . . . ." (*Id*. at 25).  Next,

the ALJ considered the testimony of Plaintiff at her hearing, that she can "only stand for

about 10 minutes at a time, and only walk for one minute at a time." (*Id*.)  The ALJ further

noted that Plaintiff "mentioned that she uses a cane every day." (*Id*.)  Plaintiff's actual

hearing testimony was as follows:

| | |
|---|---|
| ALJ: | Do you use any sort of assistive device like a cane, crutches, walker, braces, splits, anything like that? |
| Plaintiff: | I use a cane and I use a walker on occasion like, really bad days. |
| ALJ: | Were either of those prescribed to you by a doctor? |
| Plaintiff: | Yes, both. |
| ALJ: | Which doctor prescribed those, ma'am? |
| Plaintiff: | I was in the hospital over at Southwest in Cypress off of 44th and Western in Oklahoma City, Oklahoma.  I went |

> septic and couldn't walk and I had to relearn to walk and I got the walker and later on I gotta cane from Dr. Barrett.

(*Id*. at 78).  Plaintiff further testified:

| | |
|---|---|
| ALJ: | Okay.  And how often are you using that cane or walker? |
| Plaintiff: | I'm suing [sic] it every day, like even just to go down the hall, the cane. |
| ALJ: | Are you using it as [sic] home as well as when you're out in public? |
| Plaintiff: | Yep.  Yes. |
| ALJ: | How often do you use the cane versus the walker? |
| Plaintiff: | I use the cane more than the walker.  The walker is more this time of year, though.  When it gets colder that's when I really need it. |
| ALJ: | Your pain is worse then? |
| Plaintiff: | Yes. |
| ALJ: | Would it be fair to say the walker is for bad days? |
| Plaintiff: | Yes. |

(*Id*. at 95-96).

The ALJ found that Plaintiff's function report "described daily activities that are inconsistent with her allegations of disabling symptoms and limitations." (*Id*. at 25).  The ALJ then discussed the medical evidence of Plaintiff's physical limitations and contrasted Plaintiff's subjective allegations with some mild to normal findings upon physical examination, noting that Plaintiff was "ambulatory" (August 2021) and had "a normal gait"

(September 2021). (*Id*. at 26). Moreover, the ALJ noted that the medical evidence showed

normal X-ray findings and the successful use of conservative treatment. (*Id*. at 26-27).

The ALJ then considered the third-party function report completed by Plaintiff's boyfriend,

reporting limitations similar to Plaintiff's hearing testimony, but found it less probative

than the substantive medical evidence. (*Id*. at 27).

As for medical opinions regarding Plaintiff's physical condition, the ALJ considered

the opinions of State agency medical consultants Herbert Meites, M.D., and John Carey,

M.D., and found "persuasive" their assessments in September 2021 and December 2021,

that Plaintiff has "a normal gait" and "is capable of performing the full range of light

exertional work." (*Id*.)    The ALJ thus concluded:

> Based on the entire record, including the testimony of [Plaintiff], the
> undersigned concludes that the evidence fails to support [Plaintiff's]
> assertions of total disability. Despite evidence demonstrating medically
> determinable "severe" impairments, the evidence further establishes
> [Plaintiff] retains the capacity to function adequately to perform many basic
> activities associated with work. The above residual functional capacity
> assessment is supported by the objective medical evidence contained in the
> record. It is also supported by the numerous activities of daily living
> [Plaintiff] reported she engages in, including taking care of her pets, paying
> bills, counting change, doing the laundry, washing the dishes, vacuuming,
> cleaning the bathrooms, using public transportation, riding in a car, having
> no problems with personal care, not needing any special reminders to take
> care of her personal needs and grooming, [and] going out alone, . . . . (Exhibit
> B5E).    Further, the objective medical evidence is inconsistent with
> [Plaintiff's] subjective allegations. In sum, [Plaintiff] does experience some
> limitations, but only to the extent described in the residual functional
> capacity above.

(*Id*. at 28-29).

Plaintiff contends the ALJ erred in his discussion about her use of a cane. (Doc. 8,

at 8). Specifically, Plaintiff alleges that "Dr. Litchfield ordered [Plaintiff] a cane on August

11, 2021," and "[s]ubsequent records confirm a cane was ordered during that visit," but

"[t]he ALJ never mentioned, let alone discussed," Dr. Litchfield's prescription of a cane.

(*Id.*)  The undersigned agrees and finds that the ALJ erred by not considering the cane

prescription and the supporting reasons supplied by Dr. Litchfield.

On July 7, 2021, Plaintiff visited the Jackson County Memorial Hospital emergency

room due to a fall on her right knee the day before.  (AR, at 498).  On July 15, 2021,

Plaintiff was seen for a follow-up examination by Wendy Peterson, PA, who noted in her

exam records that Plaintiff had "6 previous knee surgeries," that her pain was a 7 out of 10,

that she was experiencing "right knee pain and swelling" and "numbness at [the] top of

[her] right knee," and was taking Ibuprofen and Tylenol to manage her pain.  (*Id.* at 662).

Ms. Peterson further notes that Plaintiff was "[usi]ng a walker because she [couldn't] find

her previous cane."  (*Id.*)  Ms. Peterson diagnosed Plaintiff with "knee pain, right, acute"

and ordered a knee brace and an ortho consult.  (*Id.* at 664).

On August 11, 2021, Plaintiff was seen by Dr. Litchfield regarding a number of

issues, including "to follow up after a fall 1 month ago where she injured her knee."  (*Id.*

at 654).  Plaintiff advised Dr. Litchfield that she wanted to start using a cane to help with

mobility.  (*Id.* at 652, 654).  Dr. Litchfield diagnosed Plaintiff with knee derangement and

in the comments noted that Plaintiff "continues to still have pain," that an "Ortho Consult

[was] placed at the last visit" and Plaintiff "will call to set up appointment," and that she

should "[c]ontinue to use knee brace as needed" and "Tylenol and IBU for pain."  (*Id.* at

656).  Finally, Dr. Litchfield placed an order for a cane and noted that "[Plaintiff] has [a]

walker at home."  (*Id.*)  Subsequent visits reflect Dr. Litchfield's continued view that

Plaintiff needed both an ortho consult and a cane due to her knee derangement. (*Id*. at 631, 633, 639, 642).

The ALJ's sole mention of Plaintiff's need for a cane is in summary of her hearing testimony, that she "mentioned that she uses a cane every day." (*Id*. at 25). The ALJ erred by engaging in such a limited discussion. Although the "ALJ is not required to discuss every piece of evidence," he "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Further, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

The evidence that Dr. Litchfield prescribed a cane is probative because it is the type of evidence the ALJ is supposed to consider when determining whether a hand-held assistive device is necessary. *See* SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) (noting that for an ALJ "to find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)" and that an ALJ "must always consider the particular facts of a case"). And the ALJ rejected the evidence, as he did not include the use of a cane in the RFC. Thus, the ALJ engaged in impermissible picking and choosing.

Absent any explanation of the ALJ's rejection of Plaintiff's need for a cane, the RFC, which does not account for use of a cane, is not supported by substantial evidence.

*See, e.g., Aguirre v. Saul*, No. CIV-18-1111-STE, 2019 WL 2552224, at *7 (W.D. Okla. June 20, 2019) (reversing and remanding because evidence was insufficient to support the RFC when ALJ failed to consider whether Plaintiff's assistive device was medically necessary, and Plaintiff had a prescription for a walker and Plaintiff testified that he was using a walker); *Schmidt v. Kijakazi*, No. CIV-22-653-HE, 2023 WL 4614661, at *3 (W.D. Okla. June 28, 2023), *report and recommendation adopted*, 2023 WL 4604642 (W.D. Okla. July 18, 2023) (same).

## VI.    Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **REVERSES** the decision of the Commissioner and **REMANDS** the matter for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED** this 29th day of April, 2024.



AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE